IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY EDWARD LANIER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01232-JDB-jay |
| | ) | |
| HILTON HALL, JR., | ) | |
| | ) | |
| Respondent. | ) | |

ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Jerry Edward Lanier, has filed a pro se habeas corpus petition (the "Petition")

under 28 U.S.C. § 2254.  (Docket Entry ("D.E.") 1.)  For the following reasons, the Petition is

DENIED.

BACKGROUND

In December 2011, a Dyer County, Tennessee, grand jury charged Lanier with two counts

of selling more than .5 grams of cocaine in a drug-free zone in violation of Tennessee Code

Annotated §§ 39-17-417(a)(3) and 432(b)(1).  (D.E. 11-1 at PageID 69.)  A jury trial was held in

December 2013.  (D.E. 11-4.)

Sergeant Mike Leggett, an officer with the Dyersburg, Tennessee, Police Department,

testified that "a confidential informant [("CI")] was used" in a controlled buy from the Defendant[1]

on July 1, 2011.  *State v. Lanier*, No. W2014-01840-CCA-R3-CD, 2015 WL 3397627, at *1 (Tenn.

---

[1]When discussing the underlying criminal case, the Court will refer to Lanier as the
"Defendant."

Crim. App. May 27, 2015), *appeal denied* (Sept. 21, 2015). "Sergeant Leggett recalled that when he first met with the CI on July 1, 2011, he asked the CI, 'Who can you buy from?'" *Id.* He explained that the informant then "made contact with the Defendant and arranged to meet at the CI's residence[,]" which was located on Scott Street near Scott Street Park. *Id.* Both the CI and the CI's car were searched before the controlled buy, and "[a]n electronic transmitter," which was worn by the CI, was "used to monitor the buy in real time as well as record the transaction[.]" *Id.* The officers gave the CI "$50 for the drug purchase[,]" the serial numbers of which "had been recorded by the police." *Id.* Leggett further "testified that police officers monitored the CI's exchange with the Defendant from 'around the corner by the park,' because the CI had informed the officers that the Defendant was 'very suspicious and aware of his surroundings.'" *Id.* After the transaction occurred, "the CI and the police officers met at a predetermined location where the cocaine was collected and the CI and his vehicle were again searched." *Id.*

"Chris Clements, a Dyersburg Police Department officer, testified that he worked with Sergeant Leggett on the July 1, 2011, controlled drug buy." *Id.* He stated that he had "searched the CI's person, clothing, and vehicle to ensure that the CI did not have any contraband before the drug buy commenced." *Id.* He explained that the drug purchase happened near Scott Street Park, which he described as a public park. *Id.* Clements recalled that, after the transaction, Leggett obtained the drugs from the CI, and the CI's person and his vehicle were again searched. *Id.* The searches revealed "no evidence of contraband." *Id.* Clements further "testified that he worked with the same CI on a drug buy from the Defendant on July 5, 2011." *Id.* at *2. He recalled that he "followed the same procedure as used for the July 1, 2011 controlled buy." *Id.* "Immediately after the transaction, Sergeant Clements met with the CI and collected the purchased cocaine." *Id.*

2

On cross-examination, "Sergeant Clements agreed that, during the July 1, 2011, transaction, the CI did get out of his vehicle and sit on the front porch of the Scott Street residence for approximately seven minutes." *Id.* He explained "that the CI asked the police officers for permission before doing so." *Id.*

The CI testified that he bought cocaine from the Defendant on July 1 and 5 of 2011. *Id.* at *3. A videotape of the July 1 transaction was played for the jury "and the CI narrated as the events occurred." *Id.* "On cross-examination, the CI agreed that he had asked the Defendant for powder cocaine for the July 1, 2011 transaction but that the Defendant brought him crack cocaine." *Id.*

Dyersburg police officer Mason McDowell "testified that he worked with Sergeant Clements during the July 5, 2011, controlled drug buy involving the Defendant." *Id.* at *2. "The State played the video recording of the July 5, 2011 transaction," while McDowell narrated. *Id.* The officer "identified the CI's residence on Scott Street where the transaction occurred" and "also identified a white baggie being exchanged between the CI and the Defendant as consistent with the package the CI returned to the officers immediately following the transaction." *Id.* "Officer McDowell testified that U.S. currency appeared to be transferred between the men." *Id.* On cross-examination, the officer acknowledged "that the recorded money used during the transaction was never recovered." *Id.*

"Carmen Cupples, Information Technology and Geographic Information System manager for the City of Dyersburg, identified a map her office had generated showing the distance in feet between the Scott Street residence and Scott Street Park." *Id.* She testified "that the distance between the Scott Street residence and Scott Street Park was 165 feet" and that "the distance was accurate within two to three feet." *Id.* Cupples acknowledged on cross-examination "that the

measurement was not to the entrance of the park" and "that she did not have any information showing that the Scott Street Park 'was actually adopted as a park' by the City of Dyersburg." *Id.* "She stated, however, that the software used to generate the map indicated that the property was owned by the City of Dyersburg." *Id.*

A forensic scientist from the Tennessee Bureau of Investigation testified that "the substance submitted from the July 1, 2011 controlled buy" was determined to be "1.06 grams of crack cocaine." *Id.* at *3. A second forensic scientist testified that the substance from the July 5 transaction was .66 gram of cocaine. *Id.*

The jury returned guilty verdicts on "two counts of sale of over .5 gram of a Schedule II controlled substance within a thousand feet of a public park." *Id.* at *4. The Defendant was sentenced to concurrent thirty-year terms of imprisonment. *Id.*

Petitioner took a direct appeal challenging the sufficiency of the evidence. *Id.* at *1. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the convictions, *id.* at *6, and the Tennessee Supreme Court denied discretionary review (D.E. 11-11 at PageID 525).

Lanier filed a state post-conviction petition, which was denied after an evidentiary hearing. (D.E. 11-12 at PageID 558-59.) Petitioner took an unsuccessful appeal, *Lanier v. State*, No. W2017-00920-CCA-R3-PC, 2018 WL 2175938, at **1, 8 (Tenn. Crim. App. May 10, 2018), *appeal denied* (Sept. 18, 2018), and the Tennessee Supreme Court denied permission to appeal (D.E. 11-20 at PageID 744).

DISCUSSION

Lanier filed the Petition on November 19, 2018. He asserts that the evidence was insufficient to sustain his convictions (Claim 1) and that trial counsel rendered ineffective

assistance by failing to object to several instances of prosecutorial misconduct (Claim 2). Respondent, Hilton Hall, Jr.,[2] filed the state-court record and a response to the Petition. (D.E. 11-12.) He argues that Claim 1 is without merit and Claim 2 is procedurally defaulted. Petitioner did not file a reply, although he was allowed to do so. (*See* D.E. 6 at PageID 51.)

I.    Legal Standards.

A.    Federal Habeas Review.

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the United States Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court[.]" *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (internal citations omitted).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or when "the state court confronts

---

[2]The Clerk is DIRECTED to modify the docket to reflect Hilton Hall, Jr., as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case[.]" *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *See Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (some internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works together with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available

remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process) and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him[.]" *Id.* at 327.

B. Sufficiency of the Evidence.

7

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction" is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19.

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial"). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *Desert Palace, Inc., v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or based on an "unreasonable application" of the controlling

8

federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Johnson*, 566 U.S. at 656.

    C.  Ineffective Assistance of Counsel.

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2832 (2021).  To succeed on such a claim, a petitioner must demonstrate two elements:  (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options[.]" *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

II.    Claim 1.

Petitioner contends that the evidence was insufficient to convict him of two counts of selling more than .5 grams of cocaine in a drug-free zone. He argues that the State "failed to provide evidence to the jury that the property in question was in fact a dedicated 'public park' for the purposes of the" drug-free-zone statute. (D.E. 1-1 at PageID 33.) He also maintains that there was insufficient proof that he sold cocaine on July 1 and 5, 2011. Regarding the July 1 transaction, Lanier stresses that officers Clements and McDowell did "not verify that [they] had searched [the CI] thoroughly before" the purchase, "including searching his shoes"; the informant "had access to a box his grandfather placed in [his] car prior to the alleged purchase . . . and there was no

documentation of that search or the contents of the box"; the "cocaine from the July 1 alleged transaction was crack cocaine, when [it] allegedly involved powder cocaine"; and "[t]he money given to [the CI] to make the alleged buy on July 1 was never recovered[.]" (*Id.* at PageID 34-36.) Regarding the July 5 transaction, Petitioner points out that "[t]he money given to [the CI] to make the alleged buy . . . was never recovered," and that the CI "sat on his own porch for seven minutes after he left control of Sergeant Clements and before the alleged purchase," but "[t]he police did not search the porch prior to allowing [the CI] access to it." (*Id.* at PageID 36-37.) Lastly, Petitioner posits that the evidence was insufficient to convict him of selling drugs because the CI "had good reason to want [him] to be convicted," in that "he would not be prosecuted for crimes he had committed in exchange for setting up drug buys to ensnare other people, and that he would be paid $100 each time he did this." (*Id.* at PageID 37.)

Respondent acknowledges that Petitioner exhausted these evidence-sufficiency arguments in the state courts, but he insists that the TCCA's decision that the evidence was sufficient to convict easily passes muster under the AEDPA. The Court agrees.

Under Tennessee law, "[i]t is an offense for a defendant to knowingly . . . [s]ell a controlled substance[.]" Tenn. Code Ann. § 39-17-417(a)(3). "A defendant who commits the offense in a drug-free zone, which includes property within 1000′ of a public park, is subject to additional fines and may not be released from prison due to sentence reduction credits before serving at least the minimum sentence for his sentencing range." *State v. Washington*, No. M2011-02678-CCA-R3-CD, 2012 WL 6115589, at *4 (Tenn. Crim. App. Dec. 10, 2012) (citing Tenn. Code Ann. § 39-17-432).

In assessing the sufficiency of the evidence to support Lanier's convictions for the sale of cocaine in a drug-free zone, the appellate court, citing *Jackson*, identified the relevant question as "whether, after considering the evidence in the light most favorable to the State, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lanier*, 2015 WL 3397627, at *4 (quoting *Jackson*, 443 U.S. at 319). Viewing the evidence in the light most favorable to the State, the TCCA found that

> [t]he Defendant and the CI had telephone conversations on July 1, 2011, and July 5, 2011, during which the CI indicated he wanted to buy one gram of cocaine. The Defendant set the price at $50 and agreed to meet the CI at the Scott Street residence to sell the cocaine to the CI. Once there, the Defendant took the CI's money and, on July 1, 2011, provided the CI with 1.06 grams of crack cocaine, and, on July 5, 2011, provided the CI with .66 gram of powder cocaine. The substances were later confirmed to be crack cocaine and powder cocaine, both Schedule II controlled substances. An employee of the City of Dyersburg testified that the Scott Street residence, the location where the sale took place, was within 1,000 feet of Scott Street Park. Specifically, the location of the transaction was approximately 165 feet from the park.

*Id.* at *5.

Addressing Lanier's specific arguments, the court held that "[a]ny challenge the Defendant raises with respect to the reliability of the testimony at trial was resolved by the trier of fact," which was tasked with determining "[q]uestions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *Id.* at *6 (internal quotation marks omitted). "The Defendant," the court noted, "thoroughly cross-examined the CI at trial and the jury heard about the CI's criminal history and the procedures conducted by the police in preparation for the controlled buy." *Id.* Nevertheless, "[t]he jury, by its verdict, found the CI's account of the transactions more credible than the Defendant's theory of the case." *Id.* The TCCA therefore "conclude[d] that there [was] sufficient evidence to support

the jury's finding that the Defendant was guilty beyond a reasonable doubt of sale of more than .5 gram of a Schedule II controlled substance within 1,000 feet of a public park on two separate occasions." *Id.*

Because the TCCA identified *Jackson*'s evidence-sufficiency standards and applied them to the facts of Petitioner's case, its determination that the evidence was sufficient to support the convictions is not "contrary to" controlling Supreme Court precedent. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The state appellate court's decision is also not based on an unreasonable factual determination that Scott Street Park was a public park at the time of Petitioner's offenses.[3] Although the city's employee acknowledged that she could not say whether the city had formally dedicated the space as a park, she testified that the property was designated on the city's map as

---

[3]In Lanier's case, the TCCA implicitly treated as a question of fact the issue of whether the property was a "public park." In 2020, the court explicitly affirmed that the question is to be resolved by the trier of fact in each criminal case. *See State v. Langley*, No. E2019-00723-CCA-R9-CD, 2020 WL 4728815, at \*\*5-6 (Tenn. Crim. App. Aug. 14, 2020), *appeal denied* (Jan. 14, 2021). In *Langley*, the TCCA noted that "[t]he statute . . . does not define the term 'public park[.]'" *Id.* at \*5. The court therefore adopted "ordinary and common" definitions of the term, including "a pleasure ground set apart for recreation of the public, to promote its health and enjoyment," and a "large open area usually with grass and trees, especially in a city or town, for public recreation." *Id.* The court observed that evidence demonstrating that the space "is owned by the city, maintained by the city, is open to the public, and is used solely for the purpose of recreation and resort, is the type of proof one might present in order to resolve the factual question for the trier of fact." *Id.* at \*6.

"City of Dyersburg Scott Street Park" and that the municipal records showed that the city owned the property.  (D.E. 11-3 at PageID 224-25.)  Officer Leggett testified the area contained "[a] swing set, barbecue grill," and "picnic tables."  (D.E. 11-2 at PageID 119.)  He described the property as "about an acre and a half, two acres" where "families can go and barbecue on the weekends."  (*Id.* at PageID 118-19.)  Sergeant Clements confirmed that Scott Street Park is "a public park."  (*Id.* at PageID 152.)

The TCCA also did not unreasonably find that, viewed in the light most favorable to the State, the evidence showed that Petitioner sold controlled substances on July 1 and 5, 2011, to the CI.  Although there was evidence that could call into question the informant's testimony that Lanier bought drugs from him, that evidence was presented to the jury through defense counsel's cross-examinations of the informant and the officers.  The jury was tasked with resolving any conflicts in the evidence and making credibility determinations.  Consistent with *Jackson's* requirements, the TCCA refused to disturb the jury's implicit findings that the CI and the officers were credible.  This Court, sitting in federal habeas, will not disturb the TCCA's own refusal to disrupt the jury's credibility determinations.  *See Rice v. Collins*, 546 U.S. 333, 342 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

The record, viewed in the light most favorable to the State, supports the TCCA's conclusion that the evidence was sufficient to convict Lanier of the crimes charged.  The appellate court's decision was therefore not based on an unreasonable application of *Jackson*'s standards.  Claim 1 is DENIED.

III.     Claim 2.

The inmate avers in Claim 2 that trial counsel rendered ineffective assistance by failing to object to misconduct by the prosecutor during her closing argument.  Specifically, he alleges that the prosecutor mischaracterized the evidence; made "comments [that] were intended to suggest to the jury that [he] should be punished because he chose to exercise his Sixth Amendment constitutional right to take his case to trial, rather than 'accept responsibility' and plead guilty as others had done"; and improperly vouched for the credibility of a witness.  (D.E. 1-1 at PageID 39-42.)  Respondent argues that the claim is procedurally defaulted for Lanier's failure to raise those specific instances of alleged ineffective assistance on post-conviction appeal.

In his brief to the TCCA, Lanier maintained that counsel was ineffective for failing to interview certain individuals and to object to misconduct by the prosecutor.  (D.E. 11-15 at PageID 678.)  The alleged misconduct he complained about was the prosecutor's reference to the CI as "Schaffer rather than Rogers[.]"  (*Id.* at PageID 685.)  He posited that the comment created "the inference . . . that the informant came from a very respectable family with his grandfather being a constable."  (*Id.*)

To meet the AEDPA's exhaustion requirement, and thereby avoid a procedural default, a § 2254 "petitioner must present to the federal court 'the same claim under the same theory' that he presented to the state courts."  *Clark v. Steward*, No. 12-01009-JDB-egb, 2015 WL 5706981, at *19 (W.D. Tenn. Sept. 28, 2015) (*quoting Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009)).  In his post-conviction appeal, Lanier did not argue, as he does in the present matter, that trial counsel was ineffective for failing to object to the prosecutor's alleged mischaracterization of the evidence and suggestion that he should have pleaded guilty instead of going to trial, or the

prosecutor's alleged vouching for the credibility of a witness. He therefore procedurally defaulted Claim 2. Because he has not asserted cause and prejudice to excuse the default, the claim is barred from federal habeas review. Accordingly, Claim 2 is DISMISSED.

For these reasons, the Petition is DENIED. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App.

P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is therefore DENIED.[4]

IT IS SO ORDERED this 6th day of January 2022.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[4]If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.